opinion of the court
Alan LeVine, J.
The court has decided to review the merits of both of the above-captioned cases together because of the similarity of facts and the common defendant. The common facts of these two cases are that both plaintiffs were banking customers of the defendant, Citibank, N.A. and specifically subscribers of the bank’s electronic machine banking services known as an electronic fund transfer system. Both plaintiffs allege that certain money withdrawals were charged against their checking/savings accounts without their knowledge, request or permission and are seeking to recover these amounts, namely, $770 for plaintiff Pickman and $200 for plaintiff Feldman.
A brief explanation of the procedures followed in using these electronic fund transfer systems is necessary.
The system is set up so that the customer of the bank can do “regular” banking, i.e., deposits and cash withdrawals from a machine at various branches at any time of the day *839 or night, even when a branch is closed. This process allows the customer to do his or her “regular” banking during nonbank hours at his or her own convenience. Obviously, a type of computer system had to be designed in such a way so that only the customer can activate his account without the possibility of unauthorized transactions occurring. When a customer applies for this program, a specially coded and numbered card is issued in his or her name and then the customer secretly selects a personal identification number (PIN) which he puts into the bank’s computer and it is alleged that the number is only known to the customer and the bank’s computer. To use the card, the customer must first dip his “citicard” into the machine slot, select the banking operation desired, enter his secret PIN number and then redip his card into the slot in order to execute the transaction. It would seem that the entire process is designed to safeguard the integrity of the system by keeping unauthorized transactions from occurring. However, the two plaintiffs in these cases claim that the system has been broken, resulting in financial losses to them.
In Ms. Pickman’s case she claims that on February 6, 1981, May 3, 1981, twice on May 9, 1981 and on May 10, 1981 $150 was charged against her account on each occasion and on May 10, 1981 an additional $20 was charged. In each instance, according to records introduced into evidence, Card No. 62183031515657, issued in the name of Beverly Edelkind (a/k/a Ms. Beverly Pickman) activated the cash machine resulting in the above-mentioned withdrawals and charges against Ms. Pickman’s account. Ms. Pickman testified that at no time did she make any of these transactions. Ms. Pickman further testified that she did not originally notice the February 6, 1981 discrepancy and only discovered it after a check was returned for insufficient funds in May, thereby alerting her to the May, 1981 series of transactions.
The other plaintiff, Mr. Feldman, has a similar situation, to wit, there was a $200 withdrawal on March 11, 1981 which he claims was unauthorized. However, bank records introduced into evidence indicate that the $200 transaction was actually a second transaction that day both of which were activated by a card issued to Mr. *840 Feldman. Furthermore, it would seem that both transactions occurred within 37 seconds of each other but on two separate machines located in the same branch and next to each other. Mr. Feldman readily admits that the first transaction for $50 was indeed made by him, but denies making the second transaction on the next machine for $200.
To support the defendant, Citibank’s position, their operational supervisor, Benjamin Kuck testified as to the security process used by Citibank to insure unauthorized use of an individual depositor’s account. Mr. Kuck stated that each customer of the defendant is issued a specially coded magnetic card with a specific card number. Upon receipt of the card, the customer is to go to his or her branch and secretly select and enter a personal identification code (same as PIN) into the computer, thereby allowing the customer to activate his or her account with the card and secret code. Mr. Kuck stated that the bank has gone to great length to insure the privacy of these codes and that it is even impossible for persons such as himself to obtain such information from the computer.
The court notes that the United States Congress attempted to enact legislation to cover this “new world” of banking and in 1974 created the National Commission on Electronic Fund Transfers (US Code, tit 12, § 2401). In 1977 the commission issued its final report. While the commission’s final report has not been enacted into law, the court will consider such recommendations as one factor in deciding these two cases.
In the first case, Feldman v Citibank, the court will take judicial notice of several news reports in all the medias of a rash of cash machine theft scams where a depositor is defrauded of his money by unwittingly allowing his account to be used. The scam works as follows: the depositor attempts to use one of the cash machines in the bank vestibule where two machines are located. The second machine is manned by the perpetrator of this scam who is using the telephone located in between the two cash machines, allegedly discussing a banking problem with a bank employee. The perpetrator is watching the depositor enter his PIN into the computer and then distracts him by *841 telling him that the other machine is jammed and the bank employee has instructed the depositor to insert his own card into the machine in order to unjam the allegedly broken machine. The perpetrator then puts in the depositor’s PIN code (which he observed the depositor entering into the other machine) and once again distracts the depositor and prevails upon him to once again insert his card into the broken machine. The depositor in this fraud has unwittingly allowed a thief to withdraw from his account without even knowing about it.
This particular pattern would seem to fit the facts of Mr. Feldman’s case. The bank computer statement which was entered into evidence shows that there was a $50 withdrawal from machine No. 1 located at their Broadway — 56th St. Branch, on March 11, 1981 at 7:31:11 and that a $200 withdrawal (the maximum amount allowed by the machine at one time) was transacted on the same date and branch on machine No. 2 at 7:31:48 which is only 37 seconds after the first withdrawal. Mr. Feldman, in his statement to the court, claimed he was the only one present in the banking vestibule at the time of the withdrawal.
Despite the plaintiff’s testimony to the contrary, the facts of this case are such that taking into account the defendant’s testimony as to the security provisions in effect, the court must make the inference that Mr. Feldman unwittingly allowed an unauthorized use of his account and therefor judgment must be rendered in favor of the defendant Citibank.
As to the second case, Pickman v Citibank, the situation is somewhat different. First of all, the plaintiff herein complains that there were several unauthorized withdrawals from her account on several different occasions, the first one occurring on February 6, 1981 and a series of additional withdrawals on May 3, 9, and 10. Clearly this case is different from Mr. Feldman’s in that Ms. Pickman’s losses do not fall into the same pattern of the previously described scam. However, it should be noted that Ms. Pickman testified that while she noticed the discrepancy in her account when she received her February, 1981 bank statement she did not pursue her claim until she noticed *842 additional withdrawals in May, 1981, which she claimed then alerted her to her February loss.
The National Commission on Electronic Fund Transfers adopted the following recommendation in this situation “to protect EFT account holders from incurring any liability when they have not been negligent and to protect the account holder from vague negligence standards, the commissioner recommends that the following four provisions be evaluated as Federal legislation * * * (2) Failure to notify the depositor institution for unauthorized use should render the customer liable for any subsequent unauthorized use that could have been prevented by timely notification.” (National Commission on Electronic Fund Transfers, Final Report, p 5.)
If the court were to apply the commission’s recommendation to the present case, then Ms. Pickman’s failure to notify the bank within 30 days after the February 6, 1981 withdrawal prevents her from recovering for the May, 1981 withdrawals and the bank could not be held responsible for any of the subsequent May transactions questioned by Ms. Pickman.
Since Ms. Pickman’s own inaction failed to alert defendant bank as to any possible breakdown in its security system as to her personal account, claimant cannot recover for any of the May, 1981 withdrawals. However, since defendant has failed to affirmatively show any negligence on Ms. Pickman’s part regarding the February 6, 1981 transaction, where a question arises as to possible negligence on the part of claimant or a computer, the court will decide that issue in favor of the human, rather than the machine. The expression “to err is human” will not be given effect as to the February 6, 1981 transaction.
Accordingly, Ms. Pickman is awarded a judgment in the sum of $150, together with $4.53 disbursements without interest.